1   GLYNN & FINLEY, LLP
    CLEMENT L. GLYNN, Bar No. 57117
2   JONATHAN A. ELDREDGE, Bar No. 238559
    One Walnut Creek Center
3   100 Pringle Avenue, Suite 500
    Walnut Creek, CA 94596
4   Telephone: (925) 210-2800
    Facsimile: (925) 945-1975
5   E-mail: cglynn@glynnfinley.com
            jeldredge@glynnfinley.com
6
7   Attorneys for Defendant
    Sears Holding Corporation (erroneously sued as Sears Holding, Inc.)

8

9                   UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  BIALLA & ASSOCIATES, INC.,          )   Case No.
                                        )
13                  Plaintiff,          )   **NOTICE OF REMOVAL OF ACTION**
                                        )   **UNDER 28 U.S.C. § 1441**
14      vs.                             )
                                        )
15  SEARS HOLDING, INC. and DOES 1      )
    through 10, Inclusive,              )
16                                      )
                    Defendant.          )
17  _____  )

18

19          TO THE CLERK OF THE ABOVE ENTITLED COURT:

20          PLEASE TAKE NOTICE that pursuant to 28 U.S.C. section 1441, defendant

21  Sears Holding Corporation (erroneously sued as Sears Holding, Inc.; "Sears") hereby removes to

22  this Court the state court action described below:

23          1.      On June 23, 2008, this action was commenced in the Superior Court of the

24  State of California in and for the County of Marin, entitled "BIALLA & ASSOCIATES, INC.,

25  Plaintiff, vs. SEARS HOLDING, INC. and DOES 1 through 10, inclusive, Defendants," Case

26  Number CV 083051. A copy of the summons and complaint is attached hereto as **Exhibit A**.

27          2.      Sears was formally served with the complaint and summons on July 2,

28  2008.

                                    - 1 -

1                                         **JURISDICTION**

2            3.       This action is removable to this Court pursuant to the provisions of 28

3 U.S.C. section 1441.

4                (a)      This Court has original jurisdiction over this action under 28 U.S.C.

5 section 1332, in that it is a civil action between citizens of different states and the matter in

6 controversy exceeds the sum of $75,000, exclusive of interest and costs:

7                         (i)      Plaintiff is a California corporation with its principle place

8 of business in Sausalito, California.  (Exh. A at ¶ 2.)

9                         (ii)     Defendant Sears Holding Corporation is a Delaware

10 corporation with its principal place of business in Hoffman Estates, Illinois.  (Exh. A at ¶¶ 3, 6.)

11                         (iii)    Plaintiff claims damages "in excess of two million dollars

12 ($2,000,000)" for its breach of contract claim.  (Exh. A at ¶ 24.)

13                       **INTRADISTRICT ASSIGNMENT**

14            4.       Pursuant to Civil Local Rule 3-2(c) and (d) this action is properly removed

15 to the San Francisco Division.

16            Dated:  July 23, 2008

17                                         GLYNN & FINLEY, LLP
                                              CLEMENT L. GLYNN

18                                       JONATHAN A. ELDREDGE
                                              One Walnut Creek Center

19                                       100 Pringle Avenue, Suite 500
                                          Walnut Creek, CA  94596

20

21                                 By
                                      Attorneys for Defendant

22                                     Sears Holding Corporation (erroneously sued
                                    as Sears Holding, Inc.)

23

24

25

26

27

28

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441

# EXHIBIT A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Sears Holdings, Inc. and Does 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Bialla & Associates, Inc.



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**

JUN 2 3 2008

KIM TURNER, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
*By: S. Bond, Deputy*

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia. Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):*  083051 |
| --- | --- |

Marin County Superior Court
3501 Civic Center Drive
San Rafael, CA  94104

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Laurence F. Pulgram (CSB No. 115163)     Telephone: 415-875-2300
Jennifer L. Kelly (CSB No. 193416)     Telephone: 415-875-2300
Fenwick & West LLP
555 California Street, 12th Floor, San Francisco, CA 94104

| DATE: *(Fecha)* JUN 2 3 2008 | M. TURNER  Clerk, by *(Secretario)* | S. BOND  , Deputy *(Adjunto)* |
| --- | --- | --- |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Sears Holdings, Inc.
   under: ☒ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]
**SEAL**

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.
www.USCourtForms.com

1  LAURENCE F. PULGRAM (CSB NO. 115163)
   JENNIFER L. KELLY (CSB NO. 193416)
2  FENWICK & WEST LLP
   555 California Street, 12th Floor
3  San Francisco, CA  94104
   Telephone: (415) 875-2300
4  Facsimile:  (415) 281-1350

5  Attorneys for Plaintiff
   BIALLA & ASSOCIATES, INC.

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF MARIN

10

11  BIALLA & ASSOCIATES, INC.           Case No.  CV  083051

12            Plaintiff,               **COMPLAINT FOR BREACH OF
                                       CONTRACT, NEGLIGENT
13       v.                            MISREPRESENTATION, AND
                                       DECLARATORY RELIEF**
14  SEARS HOLDINGS, INC. and DOES 1
    through 10, inclusive,
15
              Defendants.
16

17

18       Plaintiff Bialla & Associates, Inc. ("Bialla") alleges for its Complaint against defendant

19  Sears Holdings, Inc. ("Sears") as follows:

20                         **NATURE OF THE ACTION**

21       1.      Bialla brings this action for breach of contract, negligent misrepresentation and

22  declaratory relief to recover fees it is owed by Sears under several written and oral agreements

23  between the parties pursuant to which, at Sears' request, Bialla searched for, recruited, and placed

24  numerous highly qualified candidates as employees or consultants of Sears.  As detailed below,

25  although Sears represented and agreed that it would pay the entirety of Bialla's standard fee on all

26  such placements, Sears has wrongfully refused to pay substantial portions of Bialla's fee with

27  respect to three executive-level hires and the entirety of Bialla's fee with respect to approximately

28  one dozen engineers and other hires that Bialla presented to Sears in the course of its assignment.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FILED

JUN 2 3 2008

KIM TURNER, Court Executive Office
MARIN COUNTY SUPERIOR COURT
By: S. Bond, Deputy

COMPLAINT                              CASE NO _____

## PARTIES

2.      Plaintiff Bialla is a corporation organized and in good standing under the laws of California, and at all times mentioned herein was a resident of Marin County, California, with its principal place of business in Sausalito, California. Bialla is a nationally-recognized retained search and management consulting firm that locates, recruits, and places highly qualified candidates with its clients in both employment and consulting positions ranging from senior executive-level positions and outside directors to mid-level functional positions such as marketing, engineering, sales, finance, HR and legal.

3.      On information and belief, defendant Sears is an affiliate and an agent of Sears Holding Corporation and is, and at all times herein mentioned was, a corporation organized under the laws of Delaware, with its principal place of business in Hoffman Estates, Chicago. On information and belief, Sears has engaged in numerous and systematic business in California and within this county by, *inter alia*, operating and marketing numerous retail locations under the names of Sears, Kmart, The Great Indoors, Orchard Supply Hardware, and Land's End.

4.      Bialla is unaware of the full names and capacities, whether individual, corporate, or otherwise, of the defendants named herein as Does 1 through 10, inclusive, and therefore sues those defendants by such fictitious names. Pursuant to Code of Civil Procedure Section 474, Bialla will seek leave to amend the Complaint to allege said defendants' true names and capacities when ascertained.

## VENUE

5.      Venue is proper in Marin County pursuant to Code of Civil Procedure Section 395.5, because, *inter alia*, liability arose within Marin County, and the contracts relevant to this action were to be performed, in substantial part, in Marin County.

## GENERAL ALLEGATIONS

### The Parties' Agreements and Sears' Commitment To Pay Bialla's Standard Fee

6.      In mid 2007, Sears approached Bialla concerning its need to fill several employment positions within the organization. At Sears' request, Bialla partner Gordon Tucker traveled to Sears' headquarters in Hoffman Estates, Illinois, to meet with Sears employees David

-2-

COMPLAINT                                                          CASE NO. _____

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Cross and Robert Luse, who represented that they were in charge of hiring at Sears and had

2   authority to retain Bialla for these searches.

3        7.        During this meeting, which took place on or about July 25, 2007, the parties

4   discussed three positions that Sears needed filled:  Vice President General Manager, Kmart.com;

5   Divisional Vice President Product Management, Sears Holdings; and Vice President General

6   Manager, Sears.com.  The parties had extensive discussions concerning both the types of

7   compensation Sears would pay any hired candidate and the fees Bialla would receive in

8   connection with these searches.  With respect to the former, Cross and Luse represented that since

9   Sears compensates its employees primarily in cash, and does not offer stock options in the

10  corporation, executive compensation packages would include a strong base salary, participation in

11  the company's annual cash bonus programs including the Long Term Incentive Plan (the

12  "LTIP"), and restricted stock grants based on a multiple of base salary.  All were repeatedly

13  described by Cross and/or Luse as "cash-based" compensation since all incentive programs are

14  calculated based on a fixed percentage of the employee's annual base salary.  Luse further

15  described participation in the LTIP as part of an employee's *annual* compensation, since the

16  program "refreshes" every calendar year into a new three-year program.

17       8.        With respect to Bialla's fees, Tucker explained that Bialla's search fee is based on

18  all forms of cash-based compensation, including incentives, paid to hired candidates during the

19  first year (and would apply to all executive level candidates that Sears eventually hired based on

20  Bialla's introduction), and that the standard Bialla fee agreement stated this.  Both Cross and Luse

21  represented that this fee arrangement was acceptable to Sears, and that Sears customarily paid

22  recruiting firms on all forms of cash compensation.  Tucker then presented Sears with Bialla's

23  standard fee agreement for the three searches the parties had discussed.  Cross and Luse reviewed

24  the agreements, proposed certain changes relating to the timing of the payments (which were

25  accepted by Bialla), and on August 29, 2007, Cross executed each of the three fee agreements on

26  behalf of Sears.  That same day, Cross also executed a fee agreement with Bialla (on behalf of

27  Sears) for an additional executive-level search that Luse had requested of Bialla on August 3,

28  2007 (for the position of Executive Vice President, "Newco") (the "Newco Agreement"), a copy

-3-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   of which is attached hereto as **Exhibit A**. As with the other three fee agreements, Sears proposed

2   certain changes to the Newco Agreement relating to the timing of the payments, which were

3   accepted by Bialla.

4         9.     Each of the four fee agreements obligates Sears to pay Bialla 33 1/3% "of the first

5   year's cash compensation of the individual specified," defined in the contract as "base salary plus

6   signing bonus (if any) and target cash performance bonus. Stock options grants are specifically

7   excluded." The agreements further provide that Sears is obligated to pay Bialla's fee if Sears or

8   its affiliate companies hire "any candidate presented by [Bialla] during this search assignment for

9   another position above and beyond the assignment described in this agreement within twelve

10   months of the date of this Agreement." The agreements further obligate Sears to pay Bialla's

11   attorneys' fees and costs in the event Bialla has to take any action to collect its fees. *See, e.g.*,

12   Exhibit A.

13   **Bialla's Search For and Placement of Numerous Highly Qualified Candidates**

14        10.    Bialla began searching for candidates to fill these four positions immediately after

15   the fee agreements were signed. Shortly thereafter, however, Luse advised Tucker that Sears

16   urgently needed a Senior Vice President, Chief Technology Officer ("CTO") and requested Bialla

17   make the CTO search Bialla's top company priority—even if it meant Tucker, as lead partner on

18   the Sears engagement, had to drop work for other firm clients. Luse emphasized that Sears had a

19   desperate need for strong engineering leadership and talent, given the "technology hole" the

20   company found itself in. Bialla agreed to do so, and on September 19, 2007 Sears executed

21   another fee agreement with Bialla containing the same terms as those described above (the

22   "CTO Agreement"), a copy of which is attached hereto as **Exhibit B**. As with the other four fee

23   agreements, Sears proposed certain changes to the CTO Agreement relating to the timing of the

24   payments, which were accepted by Bialla.

25        11.    Although the LTIP and restricted stock grants the CTO would receive would be

26   substantially greater than that potentially to be offered to corporate VP positions, in executing the

27   CTO Agreement, Luse specifically represented and agreed that the basis for Bialla's fee would be

28   identical to that agreed to for the other four searches, on *all* cash-based compensation as

-4-

| COMPLAINT | CASE NO. _____ |
|---|---|

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

discussed in Paragraphs 7-8 above. Additionally, Tucker and Luse specifically discussed anticipated compensation package possibilities for the CTO that would likely be of far greater value than originally contemplated for the EVP, Newco search, given market conditions at that time. Tucker advised that Bialla had relationships with potential CTO candidates accustomed to earning in the range of $3-$15 million per year total compensation, and Luse specifically acknowledged this information and agreed that Sears would pay what was necessary to hire the people it so urgently needed. At no point was there any discussion by the parties or any request by Luse or anyone else at Sears to change the fee structure from the prior four fee agreements that included LTIP and restricted stock grants in the fee calculation.

12.     After the CTO Agreement was executed and Sears' commitment to compensate Bialla on all forms of any hired candidate's cash compensation re-confirmed as described in Paragraph 11, above, Bialla immediately began searching for CTO candidates. In the course of that search, Bialla recommended that, given the depth of Sears' technology hole, in addition to hiring a CTO, Sears hire a Chief Science Officer ("CSO"). Sears agreed with this recommendation, and ultimately hired Kelly Wical, a candidate Bialla presented on September 26, 2007.

13.     During the course of the CTO search, Bialla also recommended that, given Sears' desperate need for engineering talent, it hire the engineering employees of MediaMaster, a company founded by Neil Day, a candidate Bialla presented for the CTO position in early October 2007. Bialla recommended that these engineers be hired ideally via an acquisition of MediaMaster, so that Sears could also gain access to the company's ecommerce expertise. Through Bialla's connections with former executives of Walmart.com (where Day had been the Chief Information Officer before founding MediaMaster), Bialla knew that the MediaMaster engineers had deep experience in exactly the sort of help Sears needed, due to their work on the Walmart.com and homewarehouse.com implementations. Bialla also knew that Day soundly endorsed these engineers, and favored the idea of their joining Sears as a team to accelerate its ecommerce business. Bialla thus first raised the idea of hiring these engineers during a telephone call with Sears employee John Walden on September 28, 2007, during which Tucker urged Sears

-5-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT                                          CASE NO. _____ _____

1  to consider buying MediaMaster to gain access to its technology and its engineers. Walden

2  expressed significant interest in this recommendation. Bialla raised the idea of obtaining these

3  engineers again on October 22, 2007 and on October 29, 2007, during which he reiterated the

4  benefits of gaining access to MediaMaster's engineers. On information and belief, but for

5  Bialla's recommendation of the MediaMaster engineers, which it presented in combination with

6  Day, Sears had no other connection with this group, nor any knowledge of their existence,

7  qualifications, prior experience, or potential availability.

8       14.    Sears ultimately hired candidates presented by Bialla for three SVP-level

9  positions: Jim Barr (EVP, Newco); Neil Day (CTO), and Kelly Wical (CSO). All of these

10  searches were completed in record time—indeed, Wical joined the company in November 2007;

11  Day joined the company in December 2007; and Barr joined the company in January 2008. Sears

12  also acquired MediaMaster—and, on information and belief, has now hired its engineers—as of

13  early February 2008. Bialla's introduction was clearly an essential element to Sears having

14  obtained these engineers' service since, but for Bialla's introductions, Sears would never have

15  connected with these critical employees.

16  **Sears' Acknowledgement That It Owed Fees in Connection with LTIP and Stock Grants**

17       15.    During the course of the searches Bialla performed for Sears, Sears advised that it

18  was extremely pleased with the recruiting services Bialla provided. For example, shortly after

19  Day and Wical joined SHC, Walden informed Tucker that their placement was "the best

20  recruiting work that he had ever seen," and that while Day's and Wical's compensation packages

21  were higher than Sears initially had planned, these executives were "totally worth it and were

22  already making a big difference at the company."

23       16.    On November 29, 2007, Tucker sent an email to Sears employee Toyin Ogun, in

24  which he asked Sears to confirm the proper calculation of Bialla's fee with respect to the LTIP

25  component of Day and Wical's compensation packages so that Bialla could invoice for these

26  searches. Due to the fact that these new hires were arriving mid-year, and were receiving pro-

27  rated access to the LTIP, Bialla wanted to confirm that all were in agreement as to the

28  corresponding fractional calculation of Bialla's fee. In this regard, Tucker specifically

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-6-

1  highlighted to Sears' attention the fractional treatment of the LTIP, which was premised, of

2  course, on Sears' representation and agreement that LTIP would be included within the fee

3  calculation. Ogun replied the next day, requesting that Tucker confirm the calculations with Luse

4  and then send the invoices for approval. Tucker emailed the calculations to Luse that same day,

5  and during a phone call between Tucker and Luse on November 30, 2007, Luse informed Tucker

6  that the calculations looked correct to him and that he had approved them and sent them to Ogun

7  to confirm the numbers used in the calculations and to process Bialla's invoices. On December 3,

8  2007, Tucker received a phone call from Ogun, who confirmed Luse's approval of Bialla's fee

9  calculation, and that Ogun had reviewed the numbers, approved them, and requested that Tucker

10 invoice Sears based on this approval. Tucker then invoiced Sears for the CTO and CSO searches

11 based on those approved calculations.

12 **Sears' Subsequent Refusal to Pay Fees Clearly Owed To Bialla**

13     17.    Meanwhile, Sears was completing work on a major reorganization and a

14 significant number of the persons with whom Bialla had interacted eventually left the company.

15 This included Walden and Luse. On January 15, 2008—in the midst of these announced or

16 planned management changes, and six weeks after Luse and Ogun had approved the invoices on

17 December 3—Ogun informed Tucker that he had been told that Sears had a policy against paying

18 recruiting firms commissions on the cash value of LTIPs. Ogun admitted he viewed the policy as

19 completely unfair, specifically acknowledging that commissions on the cash value of Day's,

20 Wical's, and Barr's LTIP packages were owed to Bialla. Ogun nevertheless requested Bialla

21 submit revised invoices for these searches that omitted the portion of Bialla's fee attributable to

22 the LTIPs, so that Ogun could at least get approval to pay a portion of Bialla's fee before the

23 close of Sears' fiscal year. Bialla complied with this request, but specifically reserved its right to

24 collect the remaining portion of its fees.

25     18.    On or about February 1, 2008, Ogun called Tucker and advised that Sears was

26 now, for the first time, disputing its obligation to pay Bialla's fees with respect to the restricted

27 stock component of Day's, Wical's, and Barr's compensation packages. This was despite Ogun's

28 and Luse's approval of payment on those sums in December. Ogun thus requested Bialla revise

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-7-

1   its invoices yet again, this time to remove the restricted stock component and reflect only the

2   Bialla fee that would be calculated on starting salary, sign-on bonus and the non-disputed year

3   one performance bonus. Bialla did so, again expressly reserving its rights. On or about March 4,

4   2008, Sears issued a payment to Bialla for the services it provided in connection with Sears'

5   hiring of Day, Wical and Barr, which omitted the fees that were owed in connection with the

6   LTIP and restricted stock components of these employee's compensation packages.

7       19.    Between February and April 2008, Bialla repeatedly requested that Sears pay the

8   remainder of Bialla's fees related to the hiring of Day, Wical and Barr, any fees owed in

9   connection with the hiring of any of the dozens of other candidate Bialla presented during the

10  course of these searches (on information and belief, Sears has hired at least one such candidate),

11  and to provide copies of the employment agreements for the former MediaMaster engineers Sears

12  hired so that Bialla can calculate the fees owed for these placements (which Bialla estimates to be

13  in excess of $800,000). To date, Sears has flatly refused to do so.

14                     **FIRST CAUSE OF ACTION**
                           (Breach of Contract)
15                  (Against Sears and DOES 1 through 10)

16      20.    Bialla realleges and incorporates herein Paragraphs 1 through 19, above.

17      21.    Bialla entered into two agreements with Sears, each consisting of a combination of

18  written and oral terms. The Newco Agreement consists of the writing attached as Exhibit A and

19  the additional oral terms described in Paragraph 7 and 8. The CTO Agreement consists of the

20  writing attached as Exhibit B and the additional oral terms described above in Paragraphs 7, 8,

21  and 11. (Collectively, the "Agreements.")

22      22.    Bialla has performed all of its obligations with regard to the Agreements without

23  material breach thereof, except those obligations the performance of which has been waived or

24  excused by Sears' breach.

25      23.    By the acts alleged herein, Sears has breached the Agreements, including, without

26  limitation, by: (1) failing and refusing to pay Bialla the portion of its fee corresponding to the

27  LTIP and restricted stock components of Day's, Wical's, and Barr's compensation packages;

28  (2) failing and refusing to pay Bialla any fees in connection with other candidates it has hired that

-8-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT                                          CASE NO. _____

1   were presented by Bialla in the course of the searches it performed pursuant to the Agreements;

2   and (3) failing and refusing to pay Bialla any fees in connection with the hiring of the former

3   MediaMaster engineers.

4        24.   As a direct and proximate result of Sears' breach of contract, Bialla has suffered

5   damages in an amount to be proven at trial, believed to be well in excess of two million dollars

6   ($2,000,000).

7   **SECOND CAUSE OF ACTION**<br>(Negligent Misrepresentation)<br>(Against Sears and DOES 1 through 10)

8

9        25.   Bialla realleges and incorporates herein Paragraphs 1 through 24, above.

10        26.   In the course of the parties' discussions concerning Sears' hiring needs and the

11   fees that Bialla would charge to fill these positions, Sears represented that LTIP and restricted

12   stock grants based on a multiple of salary are "cash-based" compensation.  Sears further

13   represented that it understood the Agreements to obligate Sears to pay Bialla's fee with respect to

14   any LTIP and restricted stock components of a hired candidate's compensation.  These

15   representations—which were a material inducement for Bialla to enter into the Agreements and to

16   provide Sears with the extremely responsive and successful service that it did—were false.

17        27.   Representatives of Sears made these representations without any reasonable

18   ground for believing them to be true, in that, these representatives had primary responsibility for

19   hiring and negotiating contracts with recruiting firms on behalf of Sears, and in that capacity,

20   should have been aware of Sears' purported policies as they have now been articulated

21   concerning payments to recruiting firms in connection with LTIPs and restricted stock

22   components of hired candidates' compensation packages.

23        28.   These representations were made with the intent to induce Bialla to rely on them

24   and/or with the expectation that Bialla would rely on them, and Bialla did, in fact, rely on them by

25   entering into the Agreements, prioritizing Sears' hiring needs, and searching for and ultimately

26   placing numerous highly qualified candidates at Sears.

27        29.   Bialla was unaware of the falsity of these representations, and was justified in

28   relying on these representations, particularly since they were made by the individuals responsible

-9-

COMPLAINT                                                                 CASE NO. _____

FENWICK & WEST LLP<br>ATTORNEYS AT LAW<br>SAN FRANCISCO

1  for hiring at Sears.

2      30.    As a result of Bialla's reliance on the truth of the misrepresentations, Bialla

3  sustained damage.

## THIRD CAUSE OF ACTION
Declaratory Relief under California Code of Civil Procedure Section 1060)
(Against Sears and DOES 1 through 20)

6      31.    Bialla realleges and incorporates herein Paragraphs 1 through 30, above.

7      32.    An actual controversy has arisen and now exists between Bialla and Sears

8  regarding their respective rights and duties arising from the Agreements and/or other

9  representations made by Sears. Bialla contends Sears is obligated to pay Bialla: (1) with respect

10 to Sears' hiring of Day, Wical, and Barr, fees equivalent to 33 1/3 percent of the first year value

11 of these employees' LTIP and restricted stock grants; and (2) with respect to Sears' hiring—in

12 any capacity, whether as employees or consultants—of the former MediaMaster engineers and

13 any other candidates presented by Bialla in the course of the searches conducted pursuant to the

14 Agreements, fees of 33 1/3 percent of these hires' first year's cash compensation, with "cash

15 compensation" defined to include salary, signing bonus, performance bonus, LTIP, and restricted

16 stock grants. Sears disputes that any of these fees are owed.

17     33.    Such a declaration is necessary and appropriate at this time so that Bialla may

18 ascertain the extent of its rights with respect to Sears' hiring of the above-described employees

19 and/or consultants. Only by a judicial determination will the parties' dispute be resolved.

20     34.    The Agreements specify that in the event any action is required for Bialla to

21 collect its fee from Sears, Sears will pay all of Bialla's costs of collection, including reasonable

22 attorneys' fees and disbursements. Bialla has incurred significant attorneys' fees and costs in

23 collecting the fees it is owed by Sears, and seeks a judicial declaration that it is entitled to recover

24 its fees and disbursements from Sears, including those incurred in pre-litigation negotiations.

## PRAYER FOR RELIEF

26     WHEREFORE, Bialla prays for judgment on all causes of action as follows:

27     1.    An award of actual damages according to proof but in excess of two million

28 dollars ($2,000,000);

-10-

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.    A declaration that Sears is obligated to pay Bialla:  (1) with respect to Sears' hiring of Day, Wical, and Barr, fees equivalent to 33 1/3 percent of the first year value of these employees' LTIP and restricted stock grants; (2) with respect to Sears' hiring—in any capacity, whether as employees or consultants—of the former MediaMaster engineers and any other candidates presented by Bialla in the course of the searches conducted pursuant to the Agreements, fees of 33 1/3 percent of these hires' first year's cash compensation, with "cash compensation" defined to include salary, signing bonus, performance bonus, LTIP, and restricted stock grants; and (3) its reasonable attorneys' fees and disbursements incurred in pursuing collection of these fees, including during pre-litigation negotiations;

3.    An award of prejudgment interest, costs of suit, and reasonable attorneys' fees and disbursements to the extent provided by the agreements and provided by law; and

4.    Such other and further relief as the Court deems just and proper.

Dated: June 23, 2008                    FENWICK & WEST LLP

By:    _Jennifer L. Kelly / sd_
        Jennifer L. Kelly

Attorneys for Plaintiff
BIALLA & ASSOCIATES, Inc.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-11-

COMPLAINT                                          CASE NO. _____

# EXHIBIT A

# B I A L L A

#2757

SOB = VB

SE = GT

## EXECUTIVE SEARCH AGREEMENT

Effective: August 9, 2007

Sears Holdings, Inc., hereafter referred to as Client, requests the services of Bialla and Associates, Inc., hereafter referred as B & A, for the purpose of identifying and referring to Client qualified applicants for the position of Executive Vice President, "Newco".

Client will pay a fee of 33 1/3% of the first year's cash compensation of the individual specified. First year's compensation is defined as base salary plus signing bonus (if any) and target cash performance bonus.  Stock option grants are specifically excluded.

Client will pay one-third of the cash fee upon B & A's submission of an initial invoice for this search, and one-third at the end of ~~each of two consecutive months~~ month 2 thereafter, unless the search is successfully concluded earlier, when the balance of the fee will be due in full.  Final payment at placement

Client will pay reasonable out-of-pocket expenses for such items as travel, lodging, and communications incurred by B & A in the performance of services, approved by Client, and all expenditures of $25 or more will be supported by receipts.

The search will continue either until an individual acceptable to Client is located or until Client requests B & A to discontinue such search.  If Client requests B & A to discontinue such search during the initial three-month period, B & A will be paid a pro rata portion of the cash fee based on the time B & A conducted the search, compared to the initial three-month period.  If Client requests cancellation of the search after the three-month period, the full cash fee will be considered earned by B & A.

B & A will subject all possible candidates, even those identified by the client through its personal or professional relationships, in or outside the organization, to the same qualification process.

Our fees and expenses are neither refundable nor contingent upon our success in placing a candidate with your organization.  This fee structure applies even if an internal candidate emerges as your choice.

Executive Search Agreement                                    Page Two
*(continued)*

If the three month billing period is completed and the position is still open, Client may request B & A continue the search. In this case, B & A will bill Client for its costs and expenses only and no fee will be charged to Client.

Should Client or any Client affiliate company hire any candidate presented by B & A during this search assignment for another position above and beyond the assignment described in this agreement within twelve months of the date of this Agreement, it is agreed that B & A will be entitled to receive a fee that is consistent with standard B & A fees for a search at the level of the hired candidate.

In the unlikely event that any action is required to collect B & A's fee, Client agrees to pay all of B & A's costs of collection, including reasonable attorneys' fees and disbursements.

Accepted and agreed:                      Accepted and agreed:

BIALLA and ASSOCIATES, INC.               SEARS HOLDINGS, INC.

By: _____                       By: _____

Date: __9/9/07__                          Date: __8/20/07__

# EXHIBIT B

*#2762*
*SOB=VB*
*SE=6T*

# B I A L L A

## EXECUTIVE SEARCH AGREEMENT

Effective: September 12, 2007

Sears Holdings, Inc., hereinafter referred to as Client, requests the services of Bialla and Associates, Inc., hereinafter referred as B & A, for the purpose of identifying and referring to Client qualified applicants for the position of Senior Technology Officer.

Client will pay a fee of 33 1/3% of the first year's cash compensation of the individual specified. First year's compensation is defined as base salary plus signing bonus (if any) and target cash performance bonus. Stock option grants are specifically excluded.

Client will pay one-third of the cash fee upon B & A's submission of an initial invoice for this search, and one-third at the end of each of two consecutive months *Month 2* thereafter, unless the search is successfully concluded earlier, when the balance of the fee with be due in full. *paid in full. Final payment at placement.*

Client will pay reasonable out-of-pocket expenses for such items as travel, lodging, and communications incurred by B & A in the performance of services, approved by Client, and all expenditures of $25 or more will be supported by receipts.

The search will continue either until an individual acceptable to Client is located or until Client requests B & A to discontinue such search. If Client requests B & A to discontinue such search during the initial three-month period, B & A will be paid a pro rata portion of the cash fee based on the time B & A conducted the search, compared to the initial three-month period. If Client requests cancellation of the search after the three-month period, the full cash fee will be considered earned by B & A.

B & A will subject all possible candidates, even those identified by the client through its personal or professional relationships, in or outside the organization, to the same qualification process.

Our fees and expenses are neither refundable nor contingent upon our success in placing a candidate with your organization. This fee structure applies even if an internal candidate emerges as your choice.

Executive Search Agreement                                    Page Two
*(continued)*

If the three month billing period is completed and the position is still open, Client may request that B & A continue the search. In this case, B & A will bill Client for its costs and expenses only, and no additional fee will be charged to Client.

Should Client or any Client affiliate company hire any candidate presented by B & A during this search assignment for another position above and beyond the assignment described in this Agreement within twelve months of the date of this Agreement, it is agreed that B & A will be entitled to receive a fee that is consistent with standard B & A fees for a search at the level of the hired candidate.

In the unlikely event that any action is required to collect B & A's fee, Client agrees to pay all of B & A's costs of collection, including reasonable attorneys' fees and disbursements.

Accepted and agreed:                    Accepted and agreed:

BIALLA and ASSOCIATES, INC.            SEARS HOLDINGS, INC.

By: _____                By: _____

Date: 9/12/07                          Date: 9-19-07