1  GLYNN & FINLEY, LLP
   CLEMENT L. GLYNN, Bar No. 57117
2  JONATHAN A. ELDREDGE, Bar No. 238559
   One Walnut Creek Center
3  100 Pringle Avenue, Suite 500
   Walnut Creek, CA 94596
4  Telephone: (925) 210-2800
   Facsimile: (925) 945-1975
5  E-mail: cglynn@glynnfinley.com
            jeldredge@glynnfinley.com
6
   Attorneys for Defendant
7  Sears Holdings Management Corporation (erroneously sued as Sears Holding, Inc.)

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  BIALLA & ASSOCIATES, INC.,          )   **Case No.** C 08-03529 MMC
                                        )
13              Plaintiff,              )   **DEFENDANT SEARS HOLDINGS**
                                        )   **MANAGEMENT CORPORATION'S**
14      vs.                             )   **ANSWER TO PLAINTIFF'S**
                                        )   **COMPLAINT**
15  SEARS HOLDING, INC. and DOES 1      )
    through 10, Inclusive,              )
16                                      )   **JURY TRIAL DEMANDED**
                Defendant.              )
17  _____)

18

19          Defendant Sears Holdings Management Corporation, erroneously sued as Sears

20  Holding, Inc. ("Defendant"), answers the Complaint of Plaintiff Bialla & Associates, Inc.

21  ("Plaintiff") as follows:

22                      **Nature of the Action**

23          1.      Answering paragraph 1 of the Complaint, Defendant avers that the paragraph

24  appears to contain mainly statements of argument and legal conclusions and not factual

25  allegations.  Defendant is not required to answer legal conclusions.  To the extent the paragraph

26  contains allegations requiring a response from Defendant, Defendant denies them on information

27  and belief.

28  ///

                                      - 1 -

**Parties**

2.     Answering paragraph 2 of the Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations, and on that basis denies them.

3.     Answering paragraph 3 of the Complaint, Sears Holdings Management Corporation is the proper party but has erroneously been sued as Sears Holding, Inc.  Defendant admits it is a corporation organized under the laws of Delaware and its principal place of business is in Hoffman Estates, Illinois (not Chicago).  Defendant further admits it conducts business in California and Marin County.

4.     Answering paragraph 4 of the Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations, and on that basis denies them.

**Venue**

5.     Answering paragraph 5 of the Complaint, Defendant avers that the matter has been properly removed to the Northern District of California, rendering moot the issue of state court venue.

**General Allegations**

6.     Answering paragraph 6 of the Complaint, Defendant generally admits all of the allegations except for the allegation related to Messrs. Cross and Luse's representations to Plaintiff, which Defendant denies on information and belief.

7.     Answering paragraph 7 of the Complaint, Defendant admits generally that it discussed the three positions with Plaintiff, including compensation for the positions, and Bialla's fees.  Defendant denies the remaining allegations in said paragraph, and specifically denies that it agreed that computation of Plaintiff's fee would include either the LTIP or restricted stock.

8.     Answering paragraph 8 of the Complaint, Defendant admits generally that the parties discussed Sears' needs, how Plaintiff's fee would be determined, and related subjects. Defendant further admits that it entered into the contracts attached as Exhibits to the Complaint.

- 2 -

1    Except as so admitted, Defendant denies the allegations of said paragraph, and specifically

2    denies that it agreed that computation of Plaintiff's fee would include either the LTIP or

3    restricted stock.

4        9.    Answering paragraph 9 of the Complaint, Defendant avers that the paragraph

5    appears to contain mainly legal conclusions and not factual allegations.  Defendant is not

6    required to answer legal conclusions.  Defendant further avers that the referenced agreements are

7    the primary evidence of their contents.  Except as so averred, Defendant denies the allegations of

8    said paragraph.

9        10.   Answering paragraph 10 of the Complaint, Defendant admits that it requested

10   Plaintiff's assistance in connection with the referenced search, and entered into the agreement

11   attached as Exhibit B for the purpose generally described in said paragraph.  Except as so

12   admitted, Defendant denies the allegations of said paragraph.

13       11.   Answering paragraph 11 of the Complaint, Defendant admits generally that the

14   parties discussed Defendant's hiring needs and related subjects. Except as so admitted,

15   Defendant denies the allegations of said paragraph, and specifically denies that it agreed that

16   computation of Plaintiff's fee would include either the LTIP or restricted stock.

17       12.   Answering paragraph 12 of the Complaint, Defendant admits that it hired Mr.

18   Wical who was a candidate presented by Plaintiff.  Except as so admitted, Defendant denies the

19   allegations and specifically denies that it agreed that computation of Plaintiff's fee would include

20   either the LTIP or restricted stock.

21       13.   Answering paragraph 13 of the Complaint, Defendant avers that Plaintiff did not

22   contract with Defendant with respect to the former employees of MediaMaster other than Mr.

23   Day, nor did Plaintiff present to Defendant any former employees of MediaMaster other than

24   Mr. Day, and that Plaintiff has no right to compensation based on the hiring of any such

25   personnel.  Except as so averred, Defendant denies the allegations of said paragraph.

26       14.   Answering paragraph 14 of the Complaint, Defendant admits that it hired Jim

27   Barr, Neil Day and Kelly Wical.  Except as so admitted, Defendant denies the remaining

28   allegations of said paragraph.

SEARS HOLDINGS MANAGEMENT CORPORATION'S ANSWER

1    15.    Answering paragraph 15 of the Complaint, Defendant denies the allegations for

2    lack of information or belief.

3    16.    Answering paragraph 16 of the Complaint, Defendant admits that Plaintiff sent

4    emails on November 29 and 30, 2007 to Sears' employees that referenced the LTIP, the primary

5    evidence of which is reflected in the documents themselves.  Except as so admitted, Defendant

6    denies the remaining allegations of said paragraph, and specifically denies that it ever approved

7    calculation of plaintiff's fee by inclusion of either the LTIP or restricted stock.

8    17.    Answering paragraph 17 of the Complaint, Defendant admits that Messrs. Luse

9    and Walden ended their employment with Sears.  Defendant further admits that Ogun advised

10   Plaintiff that Defendant did not agree that Plaintiff's fee could be computed based on either the

11   LTIP or the restricted stock.  Except as so admitted, Defendant denies the remaining allegations

12   of said paragraph.

13   18.    Answering paragraph 18 of the Complaint, Defendant admits that it made a

14   payment to Plaintiff on or about March 4, 2008 that did not include an amount attributable to the

15   LTIP and restricted stock awards to Messrs. Barr, Day and Wical.  Except as so admitted,

16   Defendant denies the remaining allegations of said paragraph.

17   19.    Answering paragraph 19 of the Complaint, Defendant admits that Plaintiff and

18   Defendant have discussed Plaintiff's contention that it is entitled to additional fees and that the

19   parties reached no agreement.  Except as so admitted, Defendant denies the remaining

20   allegations of said paragraph.

21                              **First Cause of Action**

22                              **(Breach of Contract)**

23                      **(Against Sears and DOES 1 through 10)**

24   20.    Answering paragraph 20 of the Complaint, Defendant incorporates by this

25   reference its responses to paragraphs 1 through 19.

26   21.    Answering paragraph 21 of the Complaint, Defendant avers that the paragraph

27   contains legal conclusions not requiring a response from Defendant.  To the extent the paragraph

28   contains allegations requiring a response from Defendant, Defendant avers that the parties'

- 4 -

SEARS HOLDINGS MANAGEMENT CORPORATION'S ANSWER

1  agreements were set forth in writing drafted by Plaintiff, that said writings comprised the entire

2  agreements between the parties and none of the agreements were "partly oral" as now contended

3  by Plaintiff.  Except as so admitted, Defendant denies the allegations of said paragraph.

4      22.    Defendant denies the allegations of paragraph 22.

5      23.    Defendant denies the allegations of paragraph 23.

6      24.    Defendant denies the allegations of paragraph 24, and further specifically denies

7  that Plaintiff has been damaged in any amount, or at all, by reason of Defendant's conduct.

8                          **Second Cause of Action**

9                          **(Negligent Misrepresentation)**

10                     **(Against Sears and DOES 1 through 10)**

11     25.    Answering paragraph 25 of the Complaint, Defendant incorporates by this

12  reference its responses to paragraphs 1 through 24.

13     26.    Defendant denies the allegations of paragraph 26

14     27.    Defendant denies the allegations of paragraph 27, and specifically denies that it

15  misrepresented its policies to Plaintiff.

16     28.    Defendant avers that the parties' agreements were set forth in writings prepared

17  by Plaintiff and that there were no "oral agreements" that modified those writing.  Except as so

18  averred, Defendant denies the allegations of said paragraph.

19     29.    Defendant denies the allegations of paragraph 29.

20     30.    Defendant denies the allegations of paragraph 30.

21                          **Third Cause of Action**

22                     **(Against Sears and DOES 1 through 20)**

23     31.    Answering paragraph 31 of the Complaint, Defendant incorporates by this

24  reference its responses to paragraphs 1 through 30.

25     32.    Answering paragraph 32 of the Complaint, Defendant denies that there is any

26  proper legal basis for declaratory relief.  To the extent Plaintiff claims rights to compensation

27  described in said paragraph, Defendant denies that Plaintiff has any such right to payment.

28     33.    Defendant denies the allegations of paragraph 33.

SEARS HOLDINGS MANAGEMENT CORPORATION'S ANSWER

1    34.    Answering paragraph 34of the Complaint, Defendant admits that the agreements

2    contain provisions respecting attorneys' fees, the significance of which is a matter of law for the

3    Court.  Except as so admitted, Defendant denies the remaining allegations of said paragraph.

4    **AFFIRMATIVE DEFENSES**

5    As separate and affirmative defenses to each of the claims asserted in the

6    Complaint, Defendant alleges:

7    **FIRST AFFIRMATIVE DEFENSE**

8    **(Failure to State a Claim)**

9    As a separate and additional defense, Defendant avers that the Complaint and

10   each purported claim for relief fails to state facts sufficient to state a claim for which relief can

11   be granted.

12   **SECOND AFFIRMATIVE DEFENSE**

13   **(Unclean Hands)**

14   As a separate and additional defense, Defendant is informed and believes, and

15   thereon avers that Plaintiff has unclean hands which precludes relief.

16   **THIRD AFFIRMATIVE DEFENSE**

17   **(Waiver)**

18   As a separate and additional defense, Defendant is informed and believes and

19   thereon avers that Plaintiff's claims are barred by the doctrine of waiver.

20   **FOURTH AFFIRMATIVE DEFENSE**

21   **(Estoppel)**

22   As a separate and additional defense, Defendant is informed and believes and

23   thereon avers that Plaintiff's claims are barred by the doctrine of equitable estoppel.

24   **FIFTH AFFIRMATIVE DEFENSE**

25   **(Comparative or Contributory Fault)**

26   As a separate and additional defense, Defendant is informed and believes and

27   thereon avers that Plaintiff's own negligence caused or contributed to the loss alleged in the

28   Complaint.

SEARS HOLDINGS MANAGEMENT CORPORATION'S ANSWER

1

**SIXTH AFFIRMATIVE DEFENSE**

2

**(Offset)**

3        As a separate and additional defense, Defendant avers that Plaintiff's claims are

4    subject to an offset, more particularly described in Defendant's Counterclaim.

5

**SEVENTH AFFIRMATIVE DEFENSE**

6

**(Unjust Enrichment)**

7        As a separate and additional defense, Defendant is informed and believes and thereon

8    avers that Plaintiff would be unjustly enriched if it received the relief prayed for in the Complaint.

9

**EIGHTH AFFIRMATIVE DEFENSE**

10

**(Parol Evidence Rule)**

11        Plaintiff's claim that the written agreements between the parties did not set forth their

12    complete agreement is barred by the Parol Evidence Rule.

13

**NINTH AFFIRMATIVE DEFENSE**

14

**(Reservation of All Other Affirmative Defenses)**

15        Defendant presently has insufficient knowledge or information upon which to

16    form a belief as to whether it may have additional affirmative defenses available.  Defendant

17    reserves the right to assert and rely on any additional affirmative defenses that may become

18    available or apparent during discovery proceedings and/or trial.

19        WHEREFORE, Defendant prays for judgment on Plaintiff's Complaint as

20    follows:

21                1.      That Plaintiff be awarded nothing in this action, and its Complaint be

22                        dismissed with prejudice;

23                2.      That judgment be entered in favor of Defendant on the Complaint;

24    ///

25    ///

26    ///

27    ///

28    ///

SEARS HOLDINGS MANAGEMENT CORPORATION'S ANSWER

1        3.      That Defendant be awarded costs of suit and attorneys' fees.

2        4.      For such other and further relief as the court may deem just and proper.

3    Dated:  August 15, 2008

4                         GLYNN & FINLEY, LLP
                           CLEMENT L. GLYNN

5                         JONATHAN A. ELDREDGE
                         One Walnut Creek Center

6                         100 Pringle Avenue, Suite 500
                         Walnut Creek, CA  94596

7

8                         By_____
                         Attorneys for Defendant

9                         Sears Holdings Management Corporation
                         (erroneously sued as Sears Holding, Inc.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SEARS HOLDINGS MANAGEMENT CORPORATION'S ANSWER

1

**DEMAND FOR JURY TRIAL**

2

Sears Holdings Management Corporation (erroneously sued as Sears Holdings,

3

Inc.) hereby demands a jury trial on all counterclaims so triable.

4

Dated:  August 15, 2008

5

GLYNN & FINLEY, LLP
CLEMENT L. GLYNN

6

JONATHAN A. ELDREDGE
One Walnut Creek Center

7

100 Pringle Avenue, Suite 500
Walnut Creek, CA  94596

8

9

By _____
Attorneys for Defendant and Counter-

10

Claimant Sears Holdings Management
Corporation (erroneously sued as Sears

11

Holdings, Inc.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SEARS HOLDINGS MANAGEMENT CORPORATION'S ANSWER



1  GLYNN & FINLEY, LLP
   CLEMENT L. GLYNN, Bar No. 57117
2  JONATHAN A. ELDREDGE, Bar No. 238559
   One Walnut Creek Center
3  100 Pringle Avenue, Suite 500
   Walnut Creek, CA 94596
4  Telephone: (925) 210-2800
   Facsimile: (925) 945-1975
5  E-mail: cglynn@glynnfinley.com
           jeldredge@glynnfinley.com
6
   Attorneys for Defendant
7  Sears Holdings Management Corporation (erroneously sued as Sears Holdings, Inc.)

8

9                       UNITED STATES DISTRICT COURT

10                     NORTHERN DISTRICT OF CALIFORNIA

11

12  BIALLA & ASSOCIATES, INC.,           )    Case No. C 08-03529 MMC
                                         )
13                  Plaintiff,           )    **DEFENDANT SEARS HOLDINGS**
                                         )    **MANAGEMENT CORPORATION'S**
14       vs.                             )    **COUNTER-CLAIMS FOR:**
                                         )
15  SEARS HOLDING, INC. and DOES 1       )       **(1) BREACH OF CONTRACT**
    through 10, Inclusive,               )       **(2) UNJUST ENRICHMENT**
16                                       )
                    Defendant.           )    **JURY TRIAL DEMANDED**
17  _____  )

18

19          Defendant Sears Holdings Management Corporation, erroneously sued as Sears

20  Holdings, Inc. ("Defendant"), asserts the following counter-claims.

21                                **THE PARTIES**

22       1.      Sears Holdings Management Corporation ("Sears") is a Delaware corporation

23  with its principle place of business in Hoffman Estates, Illinois.

24       2.      Sears is informed and believes that Bialla & Associates, Inc. ("Bialla") is a

25  California corporation with its principle place of business in Sausalito, California.

26  ///

27  ///

28  ///

                                       - 1 -

1                           **JURISDICTION**

2       3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as complete diversity of

3 citizenship exists and the amount in controversy is more than $75,000, exclusive of interest and

4 costs.

5       4.      This Court also has jurisdiction pursuant to 28 U.S.C. § 1367 and the doctrine of

6 supplemental jurisdiction as Sears' counterclaims are so closely related to the claims asserted by

7 Bialla that they form part of the same case or controversy.

8       5.      This Court has personal jurisdiction over Bialla as it has its principal place of

9 business and does business within this judicial district and has committed and is committing the

10 acts alleged herein within this judicial district.

11                              **VENUE**

12       6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 as a

13 substantial part of the events and omissions giving rise to this action occurred within this district.

14                   **GENERAL ALLEGATIONS**

15       7.      Between August and November 2007, Sears entered into six agreements

16 ("Agreements") with Bialla requiring Bialla to identify and refer qualified applicants to Sears for

17 six employment positions: Executive Vice President "Newco," Senior Technology Officer, Vice

18 President General Manager Sears.com / Marketplace, Vice President General Manager

19 Kmart.com / Marketplace, Divisional Vice President Product Management Sears Holdings and

20 Director, Kmart.com. Copies of the agreements are attached as collective **Exhibit A**.

21       8.      Five of the Agreements provided that Sears was required to pay Bialla a specified

22 fee in installments: one-third when Bialla submitted an initial invoice for the search, one-third

23 after the second month and the final one-third "at placement." The agreement for Director,

24 Kmart.com provided that Sears was required to pay Bialla a specified fee in installments: one-

25 third when Bialla submitted an initial invoice for the search, one-third after the end of the first

26 month and the final one-third when an offer of employment is accepted by the selected

27 candidate.

28

SEARS HOLDINGS MANAGEMENT CORPORATION'S COUNTERCLAIMS

9.      For the Executive Vice President "Newco" position, Bialla identified and referred an applicant to Sears who was hired. Sears paid the initial and second month installments of $77,777.77 each, and later erroneously paid 100 percent of the fee on March 7, 2008. Thus, Sears overpaid Bialla $155,555.54.

10.     For the Senior Technology Officer position, Bialla identified and referred an applicant to Sears who was hired. Sears paid the initial installment of $77,777.77, and later erroneously paid 100 percent of the fee on March 7, 2008. Thus, Sears overpaid $77,777.77.

11.     For the Vice President General Manager Sears.com / Marketplace position, Bialla did not identify and refer an applicant to Sears who was hired. Sears paid all three installments of $41,667.67 even though no one was placed. Thus, Sears overpaid $41,667.67.

12.     For the Divisional Vice President Product Management Sears Holdings position, Bialla did not identify and refer an applicant to Sears who was hired. Sears paid all three installments of $41,667.67 even though no one was placed. Further, Bialla used the same cash compensation estimate for a Divisional Vice President as it did for a Vice President, which resulted in inflated installment payments. As a result, Sears has overpaid Bialla for this search by more than $41,667.67.

13.     For the Director, Kmart.com position, Bialla did not identify and refer an applicant to Sears who was hired. Sears paid all three installments of $27,777.77 even though no one was placed. Thus, Sears overpaid $27,777.77.

## **FIRST CAUSE OF ACTION**

### **(Breach of Contract)**

### **(Against Bialla)**

14.     Sears incorporates and repelads by this reference the allegations of paragraphs 1 through 14 as though fully set forth herein.

15.     Sears and Bialla executed the Agreements attached as Exhibit A.

16.     Bialla breached the Agreements by retaining the monies Sears overpaid Bialla.

17.     Sears has fully performed all of the conditions, covenants and promises required to be performed on its part under the Agreements.

- 3 -

SEARS HOLDINGS MANAGEMENT CORPORATION'S COUNTERCLAIMS

1     18.    As a result of Bialla's breaches, Sears has been damaged in an amount in excess

2  of $300,000 as will be more particularly proven at trial.

3     19.    The Agreements provide for costs and attorneys' fees. Sears is entitled to its costs

4  and reasonable attorneys' fees in amounts that will be shown.

5                    **SECOND CAUSE OF ACTION**

6                      **(Unjust Enrichment)**

7                      **(Against Bialla)**

8     20.    Sears repleads and incorporates the allegations of paragraphs 1 through 19 as

9  though fully set forth herein.

10     21.    Bialla's conduct as alleged herein, including without limitation failing to

11  reimburse installment payments that were overpaid to Bialla, has resulted in Bialla's acquisition

12  of a benefit that it may not justly retain.

13     22.    Bialla must therefore be required to return Sears the overpayments it received,

14  together with prejudgment interest, until paid.

15                    **PRAYER FOR RELIEF**

16        WHEREFORE, Sears prays for judgment against Bialla as follows:

17     1.    For compensatory damages in excess of $300,000, according to proof;

18     2.    For costs and reasonable attorneys' fees;

19     3.    For prejudgment interest; and

20     4.    For such other and further relief as the court may deem just and proper.

21    Dated:  August 15, 2008

22                  GLYNN & FINLEY, LLP
                           CLEMENT L. GLYNN

23                  JONATHAN A. ELDREDGE
                           One Walnut Creek Center

24                  100 Pringle Avenue, Suite 500
                           Walnut Creek, CA 94596

25

26                  By _____

27                  Attorneys for Defendant
                  Sears Holdings Management Corporation
                  (erroneously sued as Sears Holdings, Inc.)

28

1
### DEMAND FOR JURY TRIAL

2        Sears Holdings Management Corporation (erroneously sued as Sears Holdings,

3   Inc.) hereby demands a jury trial on all counterclaims so triable.

4        Dated:  August 15, 2008

                                        GLYNN & FINLEY, LLP
5                                       CLEMENT L. GLYNN
                                        JONATHAN A. ELDREDGE
6                                       One Walnut Creek Center
                                        100 Pringle Avenue, Suite 500
7                                       Walnut Creek, CA  94596

8
                                        By _____
9                                       Attorneys for Defendant and Counter-
                                        Claimant Sears Holdings Management
10                                      Corporation (erroneously sued as Sears
                                        Holdings, Inc.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SEARS HOLDINGS MANAGEMENT CORPORATION'S COUNTERCLAIMS

# EXHIBIT A

# B I A L L A

## EXECUTIVE SEARCH AGREEMENT

Effective: August 9, 2007

Sears Holdings, Inc., hereafter referred to as Client, requests the services of Bialla and Associates, Inc., hereafter referred as B & A, for the purpose of identifying and referring to Client qualified applicants for the position of Executive Vice President, "Newco".

Client will pay a fee of 33 1/3% of the first year's cash compensation of the individual specified. First year's compensation is defined as base salary plus signing bonus (if any) and target cash performance bonus. Stock option grants are specifically excluded.

Client will pay one-third of the cash fee upon B & A's submission of an initial invoice for this search, and one-third at the end of ~~each of two consecutive months~~ month 2 thereafter, unless the search is successfully concluded earlier, when the balance of the fee will be due in full. Final payment at placement ac

Client will pay reasonable out-of-pocket expenses for such items as travel, lodging, and communications incurred by B & A in the performance of services, approved by Client, and all expenditures of $25 or more will be supported by receipts.

The search will continue either until an individual acceptable to Client is located or until Client requests B & A to discontinue such search. If Client requests B & A to discontinue such search during the initial three-month period, B & A will be paid a pro rata portion of the cash fee based on the time B & A conducted the search, compared to the initial three-month period. If Client requests cancellation of the search after the three-month period, the full cash fee will be considered earned by B & A.

B & A will subject all possible candidates, even those identified by the client through its personal or professional relationships, in or outside the organization, to the same qualification process.

Our fees and expenses are neither refundable nor contingent upon our success in placing a candidate with your organization. This fee structure applies even if an internal candidate emerges as your choice.

Executive Search Agreement                                    Page Two
*(continued)*

If the three month billing period is completed and the position is still open, Client
may request B & A continue the search. In this case, B & A will bill Client for its
costs and expenses only and no fee will be charged to Client.

Should Client or any Client affiliate company hire any candidate presented by B & A
during this search assignment for another position above and beyond the assignment
described in this agreement within twelve months of the date of this Agreement, it is
agreed that B & A will be entitled to receive a fee that is consistent with standard B &
A fees for a search at the level of the hired candidate.

In the unlikely event that any action is required to collect B & A's fee, Client agrees
to pay all of B & A's costs of collection, including reasonable attorneys' fees and
disbursements.


Accepted and agreed:                    Accepted and agreed:

BIALLA and ASSOCIATES, INC.            SEARS HOLDINGS, INC.

By: _____          By: _____

Date: _____9/9/07_____          Date: _____8/20/07_____

# BIALLA

## EXECUTIVE SEARCH AGREEMENT

Effective: August 15, 2007

Sears Holdings, Inc., hereafter referred to as Client, requests the services of Bialla and Associates, Inc., hereafter referred as B & A, for the purpose of identifying and referring to Client qualified applicants for the position of Vice President General Manager Sears.com/Marketplace.

Client will pay a fee of 33 1/3% of the first year's cash compensation of the individual specified.  First year's compensation is defined as base salary plus signing bonus (if any) and target cash performance bonus.  Stock option grants are specifically excluded.

Client will pay one-third of the cash fee upon B & A's submission of an initial invoice for this search, and one-third at the end of each of two consecutive months Month 2 thereafter, unless the search is successfully concluded earlier, when the balance of the fee will be due in full.  Final payment at placement BC

Client will pay reasonable out-of-pocket expenses for such items as travel, lodging, and communications incurred by B & A in the performance of services, approved by Client, and all expenditures of $25 or more will be supported by receipts.

The search will continue either until an individual acceptable to Client is located or until Client requests B & A to discontinue such search.  If Client requests B & A to discontinue such search during the initial three-month period, B & A will be paid a pro rata portion of the cash fee based on the time B & A conducted the search, compared to the initial three-month period.  If Client requests cancellation of the search after the three-month period, the full cash fee will be considered earned by B & A.

B & A will subject all possible candidates, even those identified by the client through its personal or professional relationships, in or outside the organization, to the same qualification process.

Our fees and expenses are neither refundable nor contingent upon our success in placing a candidate with your organization.  This fee structure applies even if an internal candidate emerges as your choice.

Executive Search Agreement                                    Page Two
(continued)

If the three month billing period is completed and the position is still open, Client
may request B & A continue the search.  In this case, B & A will bill Client for its
costs and expenses only and no fee will be charged to Client.

Should Client or any Client affiliate company hire any candidate presented by B & A
during this search assignment for another position above and beyond the assignment
described in this agreement within twelve months of the date of this Agreement, it is
agreed that B & A will be entitled to receive a fee that is consistent with standard B &
A fees for a search at the level of the hired candidate.

In the unlikely event that any action is required to collect B & A's fee, Client agrees
to pay all of B & A's costs of collection, including reasonable attorneys' fees and
disbursements.

Accepted and agreed:                    Accepted and agreed:

BIALLA and ASSOCIATES, INC.             SEARS HOLDINGS, INC.

By: _____           By: _____

Date: _____8/15/07_____              Date: _____8/20/07_____

RECRUITMENT DEPT SHC                    NO.216    P.1

# B I A L L A

## EXECUTIVE SEARCH AGREEMENT

Effective: August 15, 2007

Sears Holdings, Inc., hereafter referred to as Client, requests the services of Bialla and Associates, Inc., hereafter referred as B & A, for the purpose of identifying and referring to Client qualified applicants for the position of Divisional Vice President Product Management Sears Holdings.

Client will pay a fee of 33 1/3% of the first year's cash compensation of the individual specified. First year's compensation is defined as base salary plus signing bonus (if any) and target cash performance bonus. Stock option grants are specifically excluded.

Client will pay one-third of the cash fee upon B & A's submission of an initial invoice for this search, and one-third at the end of ~~each of two consecutive months~~ MONTH 2 thereafter, unless the search is successfully concluded earlier, when the balance of the fee will be due in full. Final payment at placement DC

Client will pay reasonable out-of-pocket expenses for such items as travel, lodging, and communications incurred by B & A in the performance of services, approved by Client, and all expenditures of $25 or more will be supported by receipts.

The search will continue either until an individual acceptable to Client is located or until Client requests B & A to discontinue such search. If Client requests B & A to discontinue such search during the initial three-month period, B & A will be paid a pro rata portion of the cash fee based on the time B & A conducted the search, compared to the initial three-month period. If Client requests cancellation of the search after the three-month period, the full cash fee will be considered earned by B & A.

B & A will subject all possible candidates, even those identified by the client through its personal or professional relationships, in or outside the organization, to the same qualification process.

Our fees and expenses are neither refundable nor contingent upon our success in placing a candidate with your organization. This fee structure applies even if an internal candidate emerges as your choice.

RECEIVED DEPT SFC                    NO.218    P.2

Executive Search Agreement                                        Page Two
(continued)

If the three month billing period is completed and the position is still open, Client
may request B & A continue the search. In this case, B & A will bill Client for its
costs and expenses only and no fee will be charged to Client.

Should Client or any Client affiliate company hire any candidate presented by B & A
during this search assignment for another position above and beyond the assignment
described in this agreement within twelve months of the date of this Agreement, it is
agreed that B & A will be entitled to receive a fee that is consistent with standard B &
A fees for a search at the level of the hired candidate.

In the unlikely event that any action is required to collect B & A's fee, Client agrees
to pay all of B & A's costs of collection, including reasonable attorneys' fees and
disbursements.


Accepted and agreed:                    Accepted and agreed:

BIALLA and ASSOCIATES, INC.             SEARS HOLDINGS, INC.


By: _____               By: _____

Date: __8/15/07__                       Date: ___8/20/07___

# B I A L L A

## EXECUTIVE SEARCH AGREEMENT

Effective: August 15, 2007

Sears Holdings, Inc., hereafter referred to as Client, requests the services of Bialla and Associates, Inc., hereafter referred as B & A, for the purpose of identifying and referring to Client qualified applicants for the position of Vice President General Manager Sears.com/Marketplace.

Client will pay a fee of 33 1/3% of the first year's cash compensation of the individual specified. First year's compensation is defined as base salary plus signing bonus (if any) and target cash performance bonus. Stock option grants are specifically excluded.

Client will pay one-third of the cash fee upon B & A's submission of an initial invoice for this search, and one-third at the end of ~~each of two consecutive months~~ *Month 2* thereafter, unless the search is successfully concluded earlier, when the balance of the fee will be due in full. *Final payment at placement DC*

Client will pay reasonable out-of-pocket expenses for such items as travel, lodging, and communications incurred by B & A in the performance of services, approved by Client, and all expenditures of $25 or more will be supported by receipts.

The search will continue either until an individual acceptable to Client is located or until Client requests B & A to discontinue such search. If Client requests B & A to discontinue such search during the initial three-month period, B & A will be paid a pro rata portion of the cash fee based on the time B & A conducted the search, compared to the initial three-month period. If Client requests cancellation of the search after the three-month period, the full cash fee will be considered earned by B & A.

B & A will subject all possible candidates, even those identified by the client through its personal or professional relationships, in or outside the organization, to the same qualification process.

Our fees and expenses are neither refundable nor contingent upon our success in placing a candidate with your organization. This fee structure applies even if an internal candidate emerges as your choice.

Executive Search Agreement                                      Page Two
(continued)

If the three month billing period is completed and the position is still open, Client
may request B & A continue the search.  In this case, B & A will bill Client for its
costs and expenses only and no fee will be charged to Client.

Should Client or any Client affiliate company hire any candidate presented by B & A
during this search assignment for another position above and beyond the assignment
described in this agreement within twelve months of the date of this Agreement, it is
agreed that B & A will be entitled to receive a fee that is consistent with standard B &
A fees for a search at the level of the hired candidate.

In the unlikely event that any action is required to collect B & A's fee, Client agrees
to pay all of B & A's costs of collection, including reasonable attorneys' fees and
disbursements.

Accepted and agreed:                    Accepted and agreed:

BIALLA and ASSOCIATES, INC.             SEARS HOLDINGS, INC.

By: _____          By: _____

Date: _____8/15/07_____                Date: _____8/20/07_____

# B I A L L A

### EXECUTIVE SEARCH AGREEMENT

Effective: September 12, 2007

Sears Holdings, Inc., hereinafter referred to as Client, requests the services of Bialla and Associates, Inc., hereinafter referred as B & A, for the purpose of identifying and referring to Client qualified applicants for the position of Senior Technology Officer.

Client will pay a fee of 33 1/3% of the first year's cash compensation of the individual specified. First year's compensation is defined as base salary plus signing bonus (if any) and ~~target cash performance bonus.~~ Stock option grants are specifically excluded.

Client will pay one-third of the cash fee upon B & A's submission of an initial invoice for this search, and one-third at the end of ~~each of two consecutive months~~ *Month 2* ~~thereafter,~~ unless the search is successfully concluded earlier, when the balance of the fee with be ~~due in full.~~ *paid in full. Final payment at placement.*

Client will pay reasonable out-of-pocket expenses for such items as travel, lodging, and communications incurred by B & A in the performance of services, approved by Client, and all expenditures of $25 or more will be supported by receipts.

The search will continue either until an individual acceptable to Client is located or until Client requests B & A to discontinue such search. If Client requests B & A to discontinue such search during the initial three-month period, B & A will be paid a pro rata portion of the cash fee based on the time B & A conducted the search, compared to the initial three-month period. If Client requests cancellation of the search after the three-month period, the full cash fee will be considered earned by B & A.

B & A will subject all possible candidates, even those identified by the client through its personal or professional relationships, in or outside the organization, to the same qualification process.

Our fees and expenses are neither refundable nor contingent upon our success in placing a candidate with your organization. This fee structure applies even if an internal candidate emerges as your choice.

Executive Search Agreement
*(continued)*                                                    Page Two

If the three month billing period is completed and the position is still open, Client may request that B & A continue the search. In this case, B & A will bill Client for its costs and expenses only, and no additional fee will be charged to Client.

Should Client or any Client affiliate company hire any candidate presented by B & A during this search assignment for another position above and beyond the assignment described in this Agreement within twelve months of the date of this Agreement, it is agreed that B & A will be entitled to receive a fee that is consistent with standard B & A fees for a search at the level of the hired candidate.

In the unlikely event that any action is required to collect B & A's fee, Client agrees to pay all of B & A's costs of collection, including reasonable attorneys' fees and disbursements.

Accepted and agreed:                    Accepted and agreed:

BIALLA and ASSOCIATES, INC.             SEARS HOLDINGS, INC.

By: _____             By: _____

Date: ___9/12/07___                     Date: ___9-19.07___

# BIALLA

### EXECUTIVE SEARCH AGREEMENT

Effective: October 30, 2007

Sears Holdings, Inc., hereafter referred to as Client, requests the services of Bialla and Associates, Inc., hereafter referred as B & A, for the purpose of identifying and referring to Client qualified applicants for the position of Director, Kmart.com.

Client will pay a fee of 33 1/3% of the first year's cash compensation of the individual specified. First year's compensation is defined as base salary plus signing bonus (if any) and target cash performance bonus. Stock option grants are specifically excluded.

Client will pay one-third of the cash fee upon B & A's submission of an initial invoice for this search, one-third at the end of the first month of the search, and the balance will be due and immediately payable when an offer of employment is accepted by the selected candidate or if the search is canceled after the initial three-month period, per below.

Client will pay reasonable out-of-pocket expenses for such items as travel, lodging, and communications incurred by B & A in the performance of services, approved by Client, and all expenditures of $25 or more will be supported by receipts.

The search will continue either until an individual acceptable to Client is located or until Client requests B & A to discontinue such search. If Client requests B & A to discontinue such search during the initial three-month period, B & A will be paid a pro rata portion of the projected cash fee based on the time B & A conducted the search, compared to the initial three-month period. If Client requests cancellation of the search after the three-month period, the full projected cash fee will be considered earned by B & A.

B & A will subject all possible candidates, even those identified by the client through its personal or professional relationships, in or outside the organization, to the same qualification process.

Our fees and expenses are neither refundable nor contingent upon our success in placing a candidate with your organization. This fee structure applies even if an internal candidate emerges as your choice.